```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                       CHARLESTON

AUDREY MORRISON,

         Plaintiff,

v.                              CASE NO. 2:09-cv-01029

MICHAEL J. ASTRUE,
Commissioner of Social Security,

         Defendant.
```

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Audrey Gail Morrison (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on February 21, 2007, alleging disability as of January 19, 2007, due to a back injury.  (Tr. at 90-91, 92-97, 119.)  The claims were denied initially and upon reconsideration.  (Tr. at 43-48, 50-52, 53-55.) Claimant requested a hearing before an Administrative Law Judge

("ALJ"). (Tr. at 58.) The hearing was held on May 16, 2008, before the Honorable Toby J. Buel, Sr. (Tr. at 21-38.) By decision dated September 26, 2008, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 14-20.) The ALJ's decision became the final decision of the Commissioner on July 28, 2009, when the Appeals Council denied Claimant's request for review. (Tr. at 1-4.) On September 24, 2009, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2008). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is

not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f)(2008). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant

satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 16.)  Under the second inquiry, the ALJ found that Claimant has medically determinable impairments of temporomandibular joint syndrome ("TMJ"), Bright's disease[1] and hypertension, but that they are not severe.  (Tr. at 16, 19.)  On this basis, benefits were denied.  (Tr. at 16.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not

---

[1] Bright's disease is characterized by chronic inflammation of the blood vessels of the kidney with protein, specifically albumin, in the urine. http://www.medterms.com/script/main/art.asp?articlekey=20421.

abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty-nine years old at the time of the administrative hearing. (Tr. at 31.) Claimant completed the sixth grade, but quit school because of her Bright's disease. She later attained her GED. (Tr. at 33.) Claimant testified that she can read and write and do simple addition, subtraction and multiplication. (Tr. at 33.) In the past, she worked as a home worker for a home health care agency and as a security guard. (Tr. at 29.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

The record includes Claimant's elementary school records, where she attained As, Bs and Cs, before withdrawing after the sixth grade. (Tr. at 170.)

On June 22, 2006, Claimant was bitten on her left foot by a snake. She had no signs of compartment syndrome. Pulses were good, the cellulitus resolved and there were never any systemic

5

signs of envenomation.  Thus, antivenom was never administered. Claimant was discharged with directions to keep her lower extremity elevated, to take pain medication as needed and to return for follow up appointments.  (Tr. at 177.)

On December 11, 2006, Claimant reported to the emergency room with complaints of left jaw pain.  Claimant reported that it felt like her jaw was locking up.  (Tr. at 193.)  Claimant had full range of motion in the jaw.  She had no edema.  She had a small amount of crepitation with opening and closing of the jaw.  (Tr. at 119.)  She was instructed to follow up with her dentist of choice in one to two days.  (Tr. at 195.)

On July 24, 2006, Claimant reported to the emergency room with complaints of general weakness and vomiting.  She was diagnosed with viral gastroenteritis.  (Tr. at 200-02.)

On May 7, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and concluded that Claimant had no limitations.  (Tr. at 209-14.)  The source opined that Claimant was "not fully credible.  Some of her allegations are not supported by the medical findings.  Has pain of the left ear due to [impacted] cerumen.  Has [hypertension] not under good control but has no end-organ damage."  (Tr. at 214.)

The record includes treatment notes and other evidence from Gilbert Medical Center dated November 28, 2006, February 20, 2007, and June 20, 2007.  On November 28, 2006, Claimant complained of an

ear infection and stated that she cannot open her mouth wide. She also had dizziness and lightheadedness. Claimant was diagnosed with an upper respiratory infection, TMJ and high blood pressure. She was prescribed Omnicef, Clarinex and Motrin and instructed to monitor her blood pressure. (Tr. at 223.) On February 20, 2007, Claimant complained of a rapid heart rate with high blood pressure and ear pain. The treatment note is otherwise difficult to decipher. (Tr. at 222.)

On June 20, 2007, Cherri Hatfield, PAC completed a West Virginia Department of Health and Human Resources Medical Review Team (MRT) General Physical (Adults) form. Claimant reported that she had Bright's disease and high blood pressure. Claimant was diagnosed with Bright's disease, TMJ and hypertension. She opined that Claimant could not work until kidney disease was evaluated. (Tr. at 220.) She stated that Claimant should avoid long periods of "standing/talking." (Tr. at 220.)

On July 19, 2007, a State agency medical source completed a Physical Residual Functional Capacity Assessment and concluded that Claimant had no limitations. (Tr. at 225-32.) The source opined that Claimant's allegations were "not credible[,] objective findings unremarkable[,] non severe or slight impairment[,] allegations out of proportion to objective findings[,] [blood pressure] without end organ damages[,] pain left ear and impacted cerumen not disabling and no reduction of [residual functional

capacity]."  (Tr. at 230.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in failing to order a consultative examination; and (2) the ALJ erred in failing to find Claimant's TMJ, Bright's disease and hypertension to be severe impairments.  (Pl.'s Br. at 2-5.)

The Commissioner argues that (1) a consultative psychological examination was not necessary in this case; and (2) the ALJ correctly found that Claimant's TMJ disorder, Bright's disease and hypertension were not severe impairments.  (Def.'s Br. at 10-16.)

Claimant first argues that the ALJ erred in failing to order a consultative examination in this case.  Claimant argues that

> [a]t the ... hearing, William Phelps, M.A., served as a medical expert on Ms. Morrison's psychological and cognitive impairments.  When asked for his opinion of evidence in the file and IQ testing was not obtained [sic].  Also, he testified that he could not discern any achievement scores from her school records.  The ALJ continued the hearing for testing, but the record was closed before testing was obtained.  Therefore, the Decision was issued without the necessary and vital information regarding the claimant's psychological status.

(Pl.'s Br. at 3.)

Claimant asserts that the ALJ failed to follow the sequential analysis related to the evaluation of mental impairments and that "[a]lthough she acquired a GED, Ms. Morrison's IQ and cognitive abilities are still unknown."  (Pl.'s Br. at 4.)  According to

8

Claimant, the ALJ "did not discuss the claimant's mental impairments, and did not even mention the degree of functional loss in any of the four areas. Most importantly, the ALJ did not order the consultative examination that is needed to complete this file." (Pl.'s Br. at 4.)

At the administrative hearing, Claimant testified that she could read and write, do simple addition, subtraction and multiplication and make change. (Tr. at 33-34.) Although she only completed the sixth grade, having dropped out because of Bright's disease, she later attained her GED. (Tr. at 33.)

Notably, when asked about her psychological condition, Claimant testified as follows:

> Q Now, with regard to a nerve condition, psychological condition, mental condition, some problem being around people, taking orders, getting along with people, having a mental problem, do you think you have a mental problem of some sort?
>
> A No, because it – since I've been divorced, that's all I've done, is work being with people. I love being with people and working with people, but it's just, this Bright's disease causes me so much problems that I can't work. My blood pressure goes high, and the last time I was back at the doctor, it was like 179 over 94.

(Tr. at 36.)

At the start of the administrative hearing, Claimant's counsel stated that "there's not a lot in the file, and probably should have had an IQ with an MMPI." (Tr. at 26.) When the ALJ questioned the medical expert at the hearing, William Phelps, a clinical psychologist, he stated that "[t]here's never been any

diagnosis or treatment that I can tell from this record for any psychological issues." (Tr. at 27.)

When asked by the ALJ if he thought an IQ test or MMPI should be administered, as suggested by Claimant's counsel, Mr. Phelps testified that he could not "ascertain any" reason for such testing. He noted that Claimant attained her GED. He further observed that the record contains some achievement testing and reading tests and that she withdrew from school in 1971. He further testified that "I think she feels like she has problems. I think we ought to pursue it. But I, I don't, don't – I've heard no testimony, I don't – there's no allegations of record of any psychological problem." (Tr. at 28.) At the conclusion of the hearing, Claimant's counsel stated that she would like "to be able to do an IQ and an MMPI." (Tr. at 37.) The ALJ explained to Claimant that he would continue Claimant's case to

> give your attorney an opportunity to further develop whatever aspect of it needs to be developed, it sounds like there might be some medical records out there that we don't have, so we'll continue the case for 45 days for her to have you looked at by a specialist, and also, possibly, to obtain records that may not be in the file, because the case may not be in a posture where we can fairly evaluate it if we don't have the records, so we have to continue it for now.

(Tr. at 37.)

Claimant did not submit any additional evidence after the administrative hearing. In his decision, the ALJ noted that "the undersigned held the record open for 45 days to allow claimant's

10

representative to submit additional records. Those records have not been received, with an adequate amount of time given. The record is now closed ...." (Tr. at 14.) In addition, the ALJ noted Claimant's educational history and her testimony that she did not believe she had a mental problem. (Tr. at 17.)

It is Claimant's responsibility to prove to the Commissioner that she is disabled. 20 C.F.R. §§ 404.1512(a) and 416.912(a) (2008). Thus, Claimant is responsible for providing medical evidence to the Commissioner showing that she has an impairment. Id. §§ 404.1512(c) and 416.912(c). While our Court of Appeals has noted that an ALJ has a "responsibility to help develop the evidence," especially where evidence is "inadequate," Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986), he or she is not required to act as plaintiff's counsel. Clark v. Shalala, 28 F.3d 828, 830-31 (8th Cir. 1994). Claimant bears the burden of establishing a prima facie entitlement to benefits. See Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); 42 U.S.C.A. § 423(d)(5)(A)("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."). Furthermore, an ALJ is obligated to refer a claimant for a consultative examination

> [i]f your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one

11

> or more physical or mental examinations or tests.

20 C.F.R. §§ 404.1517 and 416.917 (2008).

The court proposes that the presiding District Judge find that the ALJ did not err in failing to order a consultative mental examination for Claimant or in evaluating any alleged mental impairment in keeping with the applicable regulations.

Claimant's counsel did not provide the additional evidence related to Claimant's intellectual functioning, as she had indicated she would do at the administrative hearing. She has offered no explanation as to why this was not done, and instead suggests that it was the ALJ's responsibility to obtain such information. The medical evidence of record does not suggest inadequacy either as to Claimant's level of intellectual functioning or as to any other mental impairment.

Claimant testified that she can read and write and make change, and she attained her GED. She also testified that she had no mental impairment and had no difficulty being around others or working with them. The medical expert testified that there are "no allegations of record of any psychological problem." (Tr. at 28.) The medical evidence of record simply does not suggest the need for further development of the record related to Claimant's level of intellectual functioning or any other mental impairment.

Because Claimant did not have a medically determinable mental impairment, the ALJ was not obligated to proceed past the first

step in the sequential analysis for the evaluation of mental impairments outlined at 20 C.F.R. §§ 404.1520a and 416.920a (2008). As a result, he was not required to rate the degree of functional limitation resulting from her impairments, which rating occurs at the third step in the analysis. §§ 404.1520a(b)(2) and 416.920a(b)(2).

Based on the above, the court proposes that the presiding District Judge find that the ALJ's determination that Claimant did not have severe mental impairments is supported by substantial evidence and, furthermore, that he did not err in his duty to develop the record in that regard.

Next, Claimant argues that the ALJ failed to follow the "slight abnormality" standard and erred in failing to find Claimant's TMJ, Bright's disease, and hypertension to be severe because they cause more than a minimal effect on her ability to perform work activities. (Pl.'s Br. at 5.)

A severe impairment is one "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c) and 416.920(c) (2008); see also 20 C.F.R. §§ 404.1521(a) and 416.921(a) (2008). "Basic work activities" refer to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b) and 416.921(b). Examples of basic work activities are:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling,

>    reaching, carrying, or handling;
>         (2) Capacities for seeing, hearing, and
>    speaking;
>         (3) Understanding, carrying out, and
>    remembering simple instructions;
>         (4) Use of judgment;
>         (5) Responding appropriately to
>    supervision, co-workers and usual work
>    situations; and
>         (6) Dealing with changes in a routine
>    work setting.

Id.

　　　The court proposes that the presiding District Judge find that the ALJ's determination that Claimant has medically determinable impairments of TMJ syndrome, Bright's disease and hypertension, but that these impairments are not severe, is supported by substantial evidence. The ALJ fully considered the evidence of record in making this finding and explained that he afforded significant weight to the opinions of the State agency medical sources and Judith Brendemuehl, M.D., who testified at the administrative hearing that Claimant has hypertension without end organ damage, normal renal function and TMJ without treatment. Dr. Brendemuehl testified that "I just don't have anything in this record that would give me any severe physical limitations at this point." (Tr. at 31.)

　　　In his decision, the ALJ fully considered all of Claimant's medically determinable physical impairments, alone and in combination. Importantly, at step two of the sequential analysis in determining whether Claimant had severe impairments, the ALJ

considered Claimant's subjective complaints of pain and other subjective symptoms, as is required by Social Security Ruling ("SSR") 96-3p. (Tr. at 17-18); SSR 96-3p, 1996 WL 362204, *34469-70 (July 2, 1996) (The Commissioner must consider Claimant's subjective complaints of pain and other symptoms at the second step of the sequential analysis once a medically determinable impairment is shown.).

The ALJ determined that Claimant had shown evidence of a medically determinable impairment that could cause the symptoms alleged. (Tr. at 18.) The ALJ's decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain and other symptoms, precipitating and aggravating factors, Claimant's medication and side effects and treatment other than medication. (Tr. at 17-18.)

Because Claimant did not have severe impairments, the ALJ was not obligated to proceed past the second step in the sequential analysis. Notably, if the Commissioner finds that a claimant is not disabled at a certain step, he or she need not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4) (2008).

Thus, the court proposes that the presiding District Judge find that the ALJ's determination that Claimant does not suffer severe physical impairments is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully

RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and

Recommendation and to transmit a copy of the same to counsel of record.

  October 7, 2010                       /s/ Mary E. Stanley
      Date                          Mary E. Stanley
                                    United States Magistrate Judge